Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT
### for the

*Midde* District of *Florida*

### Division

Case No. 5:20-CV-494 OC 30 PRL
(to be filled in by the Clerk's Office)

*JODY ANN URBANEK* )
)
**Plaintiff(s)** )
*(Write the full name of each plaintiff who is filing this complaint.* )
*If the names of all the plaintiffs cannot fit in the space above,* )
*please write "see attached" in the space and attach an additional* )
*page with the full list of names.)* )
-v- )
*Florida Dept. of Corrections* )
*Officer CO Coleman* )
*Officer Sargent Thompson* )
)
——————————————————— )
**Defendant(s)** )
*(Write the full name of each defendant who is being sued. If the* )
*names of all the defendants cannot fit in the space above, please* )
*write "see attached" in the space and attach an additional page* )
*with the full list of names. Do not include addresses here.)*

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.    The Parties to This Complaint    *The acronym 'n/a' means 'not applicable'.*

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name    *Jody Ann Urbanek*
All other names by which
you have been known:    *None*
ID Number    *0 — V27586*
Current Institution    *Lowell C. I. Annex*
Address    *11120 N.W. Gainesville Rd*
            *Ocala          FL     34482*
            City          State     Zip Code

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1
Name    *C/O Coleman*
Job or Title *(if known)*    *prison guard*
Shield Number    *unknown by law clerks*
Employer    *Florida Dept. of Corrections*
Address    *501 South Calhoun St*
            *Tallahassee FL 32399*
            City          State     Zip Code
☑ Individual capacity    ☐ Official capacity

Defendant No. 2
Name    *Sergeant Thompson*
Job or Title *(if known)*    *prison guard*
Shield Number    *unknown by law clerks*
Employer    *Florida Dept. of Corrections*
Address    *501 South Calhoun St*
            *Tallahassee FL 32399*
            City          State     Zip Code
☑ Individual capacity    ☐ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3

Name _n/a_

Job or Title *(if known)* _n/a_

Shield Number _n/a_

Employer _n/a_

Address _n/a_

_n/a_

| City | State | Zip Code |

_n/a_ ☐ Individual capacity    ☐ Official capacity

Defendant No. 4

Name _n/a_

Job or Title *(if known)* _n/a_

Shield Number _n/a_

Employer _n/a_

Address _n/a_

_n/a_

| City | State | Zip Code |

_n/a_ ☐ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

_Please see Attachment 1._

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

_n/a_

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.  Section 1983 allows <u>defendants</u> to <u>be found liable</u> only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any <u>State</u> or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, <u>explain how each defendant</u> <u>acted under color of state or local law</u>. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

*Please read Attachments 2. and 3.*

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

n/a  Pretrial detainee

n/a  Civilly committed detainee

n/a  Immigration detainee

☑  Convicted and sentenced state prisoner

n/a  Convicted and sentenced federal prisoner

n/a  Other *(explain)* _____

## IV.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.  If the events giving rise to your claim arose outside an institution, describe where and when they arose.

*Please read Attachment 3. n/a*

B.  If the events giving rise to your claim arose in an institution, describe where and when they arose.

Fl. Dept. of Corrections
Florida Womens Reception Center
3800 N.W. 111th Place
Ocala, Florida    34482
October 12, 2016. Statute of Limitations found pursuant to Florida Statute 95.11 to be 4 years to file.

Page 4 of 11

C.    What date and approximate time did the events giving rise to your claim(s) occur?

*October 12, 2016 at approximately 6 A.M.*

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

*Please read Attachments 3 and 5.*

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

*Please read Attachment 4*

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

*Please read Attachment 5.*

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## VII.   Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

 ☑ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

FL Dept. of Corrections
Florida Womens Reception Center
3700 N.W. 111th Place
Ocala, Florida

B.   Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

n/a ☑ No

n/a ☑ Do not know

C.   Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

n/a ☑ Yes

n/a ☑ No

☑ Do not know

If yes, which claim(s)?  n/a

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☑ Yes

☐ No

E.   If you did file a grievance:

1.   Where did you file the grievance?

*FL Dept. of Corrections*
*Florida Womens Reception Center*
*3100 N.W. 111th Place*
*Ocala, Florida*

2.   What did you claim in your grievance? *Plaintiff claimed the Criminal Conduct of CO Coleman and Sargent Thompson of Aggravated Battery of Elderly performed on Plaintiff at approx. 6 A.M. on October 12, 2016.*

3.   What was the result, if any?

*Please see Exhibit A.*
*Please read Attachment 6.*

4.   What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. (*Describe all efforts to appeal to the highest level of the grievance process.*)

*Please see Exhibit B.*
*Please read Attachment 7.*

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.    If you did not file a grievance:

   1.   If there are any reasons why you did not file a grievance, state them here:

   *n/a*

   2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

   *n/a*

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

   *Please read Attachment B*

   (Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

*n/a* ☐ Yes
☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

*n/a*

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☐ No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s)    n/a

Defendant(s)    n/a

2.    Court *(if federal court, name the district; if state court, name the county and State)*

n/a

3.    Docket or index number

n/a

4.    Name of Judge assigned to your case

n/a

5.    Approximate date of filing lawsuit

n/a

6.    Is the case still pending?  n/a

☐ Yes

☐ No

If no, give the approximate date of disposition.    n/a

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

n/a

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?    No.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

 Yes

☑ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s)    n/a

Defendant(s)    n/a

2.    Court *(if federal court, name the district; if state court, name the county and State)*

n/a

3.    Docket or index number

n/a

4.    Name of Judge assigned to your case

n/a

5.    Approximate date of filing lawsuit

n/a

6.    Is the case still pending? n/a

n/a Yes

n/a No

If no, give the approximate date of disposition    n/a

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

n/a

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: *October 5, 2020*

| | |
|---|---|
| Signature of Plaintiff | *Jody Ann Urbanek* |
| Printed Name of Plaintiff | *Jody Ann Urbanek* |
| Prison Identification # | *0-V275 86* |
| Prison Address | *Lowell C.I. Annex* |
| | *Ocala*     *FL*     *34482* |
| | City     State     Zip Code |
| | *11120 N.W. Gainesville Road.* |

### B.    For Attorneys

Date of signing: *n/a*

| | |
|---|---|
| Signature of Attorney | *n/a* |
| Printed Name of Attorney | *n/a* |
| Bar Number | *n/a* |
| Name of Law Firm | *n/a* |
| Address | *n/a* |
| | *n/a* |
| | City     State     Zip Code |
| Telephone Number | *n/a* |
| E-mail Address | *n/a* |

## CERTIFICATE OF SERVICE (1983)

Plaintiff, Jody Ann Urbanek will place in the hands of a FL D.O.C. Security Officer this Federal 1983 Form, Attachments and Exhibits for Legal Mail

Clerk's Office, United States District Court,
Golden-Collum Memorial Federal Building
and U.S. Courthouse
207 N.W. Second Street, Room 337
Ocala, Florida 34475

        and

~~Office of the U.S. Attorney General~~
~~U.S. District Court for the Middle~~
~~District of Florida~~
~~205 N.W. Second Street~~
~~Ocala, Florida 34475~~

        and

The Federal Bar Association
1220 North Fillmore Street
Suite 444
Arlington, VA  22201

On this ____7th____ day of ___October___ , 2020.

Jody A. Urbanek, DC# V27586
Lowell Correctional Inst./Annex
11120 N.W. Gainesville Road
Ocala, Florida 34482

Attachment 1

II. Basis For Jurisdiction

B. Deprivation of Rights

B. What federal constitutional or statutory rights(s) do you claim is/are being violated by State officials?

Page 3 of 11

Civil Rights were violated under the Eighth Amendment of the U.S. Constitution which protects Americans from Cruel and Unusual Punishments, the ADA (Americans Disability Act) and the Rehabilitation Act.

Prison guard CO Coleman hand-cuffed and black-boxed Plaintiff's hands to her waist pulling a dog-chain around her rendering her helpless then shakled her feet. When Plaintiff informed Coleman she had a medical disability with her right Knee and she was 62 years old and "Please, I need the First Step I can't hoist myself up, (First Step is an ADA accomodation for the disabled and elderly prisoners), Coleman blew-up threatening Plaintiff then suddenly attacked her with force. There exists an Eighth Amendment excessive-force claim. There was no reason for any type of force, just a medical disability need for the ADA accomodation.

1

continued  Attachment 1

Plaintiff was calm and respectful.
The unwillingness of Coleman to retrieve
the First Step (her job and legal duty)
was her sole reason for use of force
to get Plaintiff to the van floor.
Coleman vented-out her rage on Plaintiff's
body when Coleman became violently
agitated over Plaintiff's need for the
First Step (referred to as such because
it's constructed with steps to use to climb
up into the Outside Medical Transport van.
Coleman fumed, "The First Step is inside
Back Support and I'm not going to get it".
The transport van was parked right there
in front of the Back Support Building.
There are two eye witnesses who heard and
saw everything and are willing to testify.
Plaintiff is a model prisoner absolutely
no problem for the prison authorities.
Plaintiff became terrified of Coleman.
What Coleman did was continue her use
of force while she was still enraged as
she shoved and shoved Plaintiff's back
until she got Plaintiff standing on the
van floor. Through-out this attack, Plaintiff's
body started to fall backwards twice but
Coleman just shoved again. Coleman behaved
recklessly, maliciously and sadistically
for the very purpose of causing harm
to Plaintiff's body by continuing to shove
her back while watching Plaintiff's

continued    Attachment 1

front torso hit hard up against the hard back-side of a seat seven times in all until Coleman's brutality was her last forceful shove, sending Plaintiff's head back and gravity took over. Plaintiff's blood-curdling scream for her life that alerted both Coleman and Thompson as they moved from behind her off to each side of her and watched her body go into a head-first, backward-dive brushing past them and they had no intention of rendering aide. Sergeant Thompson a big muscular man never reached-out only watched. I was their entertainment. Plaintiff's body fell 10 feet to the concrete pavement. Plaintiff is 5'9" and the van floor is 4-4½ off the ground, so Plaintiff's head was 10-feet from the concrete pavement. The two eyewitnesses later told Plaintiff they both heard Plaintiff's head hit the concrete. Plaintiff has permanent brain damage since what began as unnecessary force to Coleman exuding a complete disregard for Plaintiff's human life. Plaintiff suffered other injuries also. Coleman's rage was not satisfied until Plaintiff lay unconscious on the concrete with chained hands to her waist and ankles shackled. State actors CO Coleman and Sgt. Thompson engaged in State action contrary to the Command of Florida State Laws and under color of State laws and violated Federal-

3

Continued    Attachment 1

Pursuant to the Prisoner's Rights four law books, Part 1 Constitutional Rights of Prisoners § 10.3 Right to Medical Aide. Plaintiff alleges the presence of a Federally Protected Right. The prisoner, Plaintiff, is to be afforded such 'Medical Care' in the form of diagnosis and treatment as is "Adequate or Reasonable". When State actors Co Coleman and Sgt. Thompson conspired to cover-up the Crime Scene while Plaintiff's unconscious body lay on the concrete pavement from the 10-foot fall head-first, they collaborated and decided not to call an Emergency Medical on the prison compound, they decided not to follow D.O.C. protocol alerting the prison Medical Dept. of Head/Brain Trauma so medical brings along a Halo; possible cervical fractures so Medical brings along a cervical collar; possible spine vertebral fractures and spinal cord injury so Medical brings the body-board and stretcher; to be honest with Medical that Plaintiff's body lay unconscious on the concrete pavement after a 10-foot fall both State actors refused; and FLORIDA prison protocol not to touch or move Plaintiff's body just by all means stay with her body until Medical help arrives. D.O.C. protocol, trained protocol, carried out everyday on prison compounds through-out Florida. Instead,

4

continued          Attachment 1

Coleman and Thompson did what "Shocks
the conscience" of ethical adults.
Coleman and Thompson had "fixed purposes"
to cover-up and to do so quickly, immediately.
According to Plaintiff's two eyewitnesses:
Ms. Kristina Reinwalt & Ms. Rachel Gonzalez,
Coleman and Thompson abruptly picked-up
Plaintiff's body and lifted her back inside
the van then jumped in the Drivers seats
and took-off for Orlando, denying Plaintiff's
Constitutional Right to render Medical Aide.
Plaintiff is a victim of unconstitutional
acts/action by State actors CO Coleman's
and Sergeant Thompson's actions performed
on Plaintiff's body; their minds felt
guilty so they never called for Medical
help and covered-up the Crime Scene and
took off. Their actions were well-
thought-out deliberate intentional acts
and they both knew it so conspired
together wanton acts and acted out of
guilty minds.
          The Eighth Amendment imposes an
affirmative duty on the government to
provide for the serious medical needs of
prisoners and for other necessities when
the prisoner could not provide for herself.
The Supreme Court held that Deliberate
Indifference to those needs would
violate the Eighth Amendment.

Attachment 2

II. Basis For Jurisdiction.

D. Liability and acted under color of State law.

Page 4 of 11

These are Civil Rights Violations and deprivation of rights secured by the U.S. Constitution and Federal Law and injuries to personal rights under color of State law to which I am entitled by reason of being a person in the eyes of the law. I found Case Law addressing Federal Precedence in Florida. 42 USCS § 1983 personal injury actions in Florida governed by § 95.11 (3)(o) assault, battery, malicious interference or any other intentional tort. Four years as the Period of Limitations. Also, (3)(f) an action founded on a Statutory Liability. (3)(j) a legal or equitable action founded on fraud. Both four years. This incident occurred on October 12, 2016 and the Period of Limitations ends October 12, 2020.

471 U.S. 261, Wilson v. Garcia, 1985. Found § 1983 personal injury actions in Florida governed by § 95.11 Florida Statute and found in State Statutes concerning injuries to personal rights.

1

continued  Attachment 2

II. Basis For Jurisdiction

D. Liability  and acted under color of State law
        Page 4 of 11

Florida Statutory Liabilities pursuant to
Title XLVI Chapter 825 Florida Statutes,
Abuse of Elderly persons or Disabled adult.
and penalties, 825.102 Battery, Aggravated
Abuse.

731 F. 2d. 640 (found in context of 471 U.S. 261).
Court held § 1983 Claim Personal Rights Injury
exists under color of State Law.

944.804(2b) D.O.C. (Dept. of Corrections in Florida)
institutional staff shall be specifically
trained to effectively supervise elderly
offenders and to detect physical and
mental changes that warrant medical
attention.

Plaintiff's Aggravated Battery performed
by CO Coleman occurred on D.O.C. property
at FWRC (Florida Womens Reception Center).
3700 N.W. 111th Place
Ocala, Florida 34482
784.045, Florida Statute, Aggravated Battery.
777.04, 782.04, Florida Statute,
            Attempted Murder.

See Attachment 1 pages 1-5 for details of
how Coleman and Thompson acted under
color of State Law.

2

Attachment 3

IV. Statement of Claim.

D. What are the facts underlying your claim(s)? ie. What happened to you? Who did what? Was anyone else involved? Who else saw what happened.

Page 4 of 11

Page 5 of 11

Please read the following Attachment 3 typed-4 paged detailed account of Plaintiff's Statement of Claim.

Plaintiff has documentation of prison guards' abuse and battery causing life threatening injuries all confirmed by doctors to have been potentially fatal by a stroke to the brain and cervical fractures that cease breathing. Plaintiff was elderly 62 years old at the time of the incident. The names of the doctors follow: Dr. Manuel Pouparinas, M.D. Dr. Lucita Pimentel, M.D.; Dr. Burrell-Jackson, PHD at FL FWRC (Florida Women's Reception Center) where the incident occurred. The Plaintiff is safely housed now at Lowell C.I. Annex a separate women's prison compound. The two eye witnesses names follow: Ms. Kristina Reinwalt and Ms. Rachel Gonzalez who eyewitnessed the entire incident from beginning to end stating they heard Plaintiff's head hit the concrete pavement from her 10-feet fall before their eyes.

During this Outside Medical Transport incident, there were two prison guards present; C/O Coleman and Sgt. Thompson. The battery of Plaintiff was performed by C/O Coleman while male Sargent Thompson who out-ranked Coleman refused to stop her. Both of their many intentional decisions nearly cost Plaintiff her life. Plaintiff was too terrified to resist their abuse. Coleman handcuffed Plaintiff then black-boxed over the cuffs running a dog chain thru it then wrapping it around Plaintiff's waist pulling Plaintiff's hands to her waist rendering Plaintiff helpless. Coleman shackled Plaintiff who informed Coleman of her medical disability with her right knee and asked Coleman to please retrieve the First Step. Coleman became

1

suddenly infuriated with Plaintiff and stated she was not going to get it then threatened Plaintiff with lock confinement for a long time. Plaintiff informed Coleman that Plaintiff is 62 years old and has one good knee and one bad knee. At hearing that Coleman became seethingly hostile towards Plaintiff then attacked Plaintiff shoving her hard over and over again until Plaintiff was standing on the van floor. Coleman continued shoving Plaintiff beating Plaintiff's body against the back side of a seat 7 times until Plaintiff's body lost balance and her heard went back and she blood curdling screamed for her life alerting both prison guards as her body did a head-first backward-dive 10-feet down striking the back of her head and neck on the concrete then blacked out unconscious. (the van floor is 4 feet above the concrete pavement and Plaintiff's height is 5'9" placing Plaintiff's head 10 feet-above the concrete.  As Plaintiff was falling, Coleman was next to her on her right-side and Thompson next to her on her left-side watching yet neither of the two prison guards reached out a hand to break Plaintiff's fall even though Plaintiff was close enough to brush past them. Another intentional decision on their part, Sgt. Thompson, a big muscular man refused to render aide to prevent Plaintiff's fall. Since Plaintiff was unconscious, the two eyewitnesses told Plaintiff later that both Coleman and Thompson made yet another intentional decision to cover-up and not-call in an Emergency Medical on the prison compound. Coleman and Thompson were D.O.C. trained not to move Plaintiff while waiting for medical

2

assistance. Protocol of first responders is to bring a halo for Head/Brain Trauma and what is medically necessary to immobilize Plaintiff's cervical vertebra until xrays and a stretcher with the board to keep her spine and spinal cord intact. Instead, C/O Coleman and Sgt. Thompson intentionally decided and collaborated to immediately pick-up Plaintiff's body, placing her body back inside the van, and took off for Orlando, a quick get away to cover-up their criminal acts. This withstanding is a very wanton act stemming from a total disregard of human life. There existed potential brain damage, stroke, cervical fractures that cease breathing or render paralysis quadriplegia. Both prison guards had absolutely no problem picking up Plaintiff's body to cover-up but not stop her fall. It turns out Plaintiff suffered Head/Brain Damage and the FWRC medical doctor CHO (Chief Health Officer), Dr. Gonzalez, M.D. issued Plaintiff a walker to ambulate for 2 years, assigned her to ADA status (American Disability Act), and security assigned her to a handicap cell. The Office of the Inspector General investigated and pulled both Coleman and Thompson off Outside Medical Transports. Coleman was assigned to an FWRC Dorm to work for 2 weeks pending completion of the investigation then up and disappeared altogether. Thompson was assigned to the FWRC Chow Hall.

Pursuant to Florida Statute 95.11 (3 )(c); (3)(f) and (3)(j), Plaintiff has 4 years to file under Statute of Limitations for battery and fraud (deception). This criminal incident occurred on

3

October 12, 2016 and the deadline to timely file is October 12, 2020.
Plaintiff no longer has a fear of reprisal now and is perfectly safe
at the Lowell C.I. Annex prison compound.

Pursuant to 944.804(2b) Institutional Staff _shall_ be
specifically trained to effectively supervise elderly offenders and
to detect physical or mental changes that warrant medical attention.

Pursuant to Title XLVI Chapter 825, Florida Statute, Abuse of
Elderly persons or disabled adult and penalties. There is Statutory
Liabilities, 825.102 Battery, Aggravated Abuse.

Respectfully Submitted,

Jody A. Urbanek, DC #V27586
Lowell Correctional Institute-Annex
11120 N.W. Gainesville Road
Ocala, Florida 34482

4

Attachment 4

I. Injuries

Sustained injuries related to 10-12-16 criminal incident event. Injuries described and stated medical treatment required and received.

Page 5 of 11

Incident occured at 6 A.M. and COColeman and Sgt. Thompson DENIED Emergency Medical until 8½ hours later at 2:30 P.M. upon returning from Outside Medical Transport. The only reason Coleman and Thompson took Plaintiff to Emergency Medical at 2:30 P.M. is because it is mandatory ~~an~~ that every prisoner must be cleared through Emergency Medical Dept.

Plaintiff has a copy of her Medical Record. Sustained injuries are:

1. Unconscious at Crime Scene.
2. Head/Brain Trauma and permanent brain damage diagnosed by Dr. Manuel Pauparinas, M.D.
3. Back and spinal cord injuries ~ diagnosed by C.Ho (Chief Health Officer) Dr. Gonzalez, M.D. treated with issued sitting walker for two years, assigned to ADA Status (Americans Disability Act) overseen by D.O.C. Administrators from Tallahassee and assigned to a handicap cell for one year approved by Security.

Continued  Attachment 4.

4. Right Knee permanently reinjured worse.
Dr. Gonzalez, M.D. treated and issued
a Knee brace.

The two State actors prison guards
CO Coleman and Sgt. Thompson absolutely
destroyed Plaintiff's good health from
healthy except for a medical disability
of her right Knee to very poor health
that has completely permanently altered
Plaintiff's daily functional ability.
Brain damaged episodes of a broad
range of body systems affected that
the brain regulates beyond the ever-present
constant brain pressure and pain. A
daily constellation of symptoms: loss of
balance equilibrium, ↑ brain pressure increases
along with extreme pain, able to pass-out
must lay down, field of vision blurs then
ocular changes of seeing shimmering, wavy
lights in rectangles silver-colored changes
to black circles with waves moving around
the outside of the circle, orbs of light,
high shrill pitch of sound in my ears tinnitus,
hyperventilating, ↑ heart-rate pounds,
↑ increase in body temperature, nausea,
motion-sickness at the turn of Plaintiff's
head even more so putting head down
or bending over increases brain pressure,
gastro-intestinal and neuromuscular changes.
10/6/20                              Jerry Ann Hubanek

Attachment 5
VI. Relief – explain the basis for these claims.
Page 5 of 11

Actual Compensatory Damage 300,000.⁰⁰.
for CO Coleman's performing crimes
on Plaintiff's body chained-body that
brought her within an inch of death;
FWHC doctors concurred Plaintiff
was facing brain hemorrage or stroke
and/or cessation of breathing from a
fractured cervical vertebrae. CO Coleman
cognitively with INTENT performed Aggravated
Battery on Elderly 62 years of age, while
displaying rage infuriated towards Plaintiff
for having a medical disability. Coleman
did so in a seethingly hostile expression,
with her cognition and a decided upon
INTENT. Coleman just couldn't get
enough violence out of her system until
the Plaintiff lay unconscious on the
cont concrete pavement. Plaintiff has
permanent brain damage.

1

continued Attachment 5
VI. Relief - explain the basis.
Page 5 of 11.

Punitive Damages #300,000.⁰⁰ for,
Oo Coleman's and Sgt. Thompson's
wanton, willful, illegal, intentional,
cognitive decisions to continue their
criminal actions on Plaintiff's
body while she lay unconscious.
Coleman and Thompson conspired
to illegally move Plaintiff's body
their motive to cover-up the evidence
of the crime scene and by so doing
deliberately placed Plaintiff in
further jeopardy of dying from brain
hemmorhage, brain stroke, cessation of
breathing from a cervical fracture.
The truth is that personally they
did not care about Plaintiff's life
she was just another worthless prisoner
to them. They immediately moved
Plaintiff's body placing her back inside
the van for Outside Medical Transport,
jumped in the driver's seats and took
off for Orlando leaving all medical
discovery and help behind as the two
eyewitnesses testify. Their legal duty
and training in protocol is to immediately
call Emergency Medical on the prison
compound and stay with the body not
touching or moving Plaintiff's body.

2

Continued Attachment 5
VI. Relief - explain the basis.
Page 5 of 11.


Both Coleman and Thompson were trained
to call Emergency Medical First Responders
to bring a Head/Brain Trauma Halo, to
bring a cervical collar and board for
any spinal cord injury or fractures in
the spine vertebra. They are D.O.C.
trained adults knowing the potential
injuries for causing death or quadri-
plegia. They could have cared less.
Coleman and Thompson conspired with
a complete disregard for Plaintiff's
human life and acted in an intended,
reckless, malicious and oppressive
character with absolutely no remorse.
The Nature of Aggravated Battery on
Elderly and Attempted Murder are the
elements of the many intentional
decisions cognitively made by Defendants
state actors two prison guards showing
INTENT that caused harm continously
and not accidental behavior action with
less than zero remorse and cover-up
leaving Plaintiff in Fear for her Life.
Coleman and Thompson came close to
Killing a 62 years old elderly woman.
It was entertainment for them.
        At Plaintiff's blood curdling loud
scream Coleman and Thompson were

continued Attachment 5
VI. Relief - explain the basis.
Page 5 of 11

standing behind Plaintiff both chose
to step aside and watch every hostile
moment of Plaintiff's head-first
backward-dive to concrete. Sgt. Thompson
2 big, muscular men just watched.
They both had no problem lifting Plaintiff's
145 lbs. body off the concrete crime
scene and placing her body to cover-up
but they could not reach out to stop her
fall that Coleman created. Eight hours
later. upon return from Orlando, according
to the two eyewitnesses, I was taken
to a room where I heard my last name
being called over and over again then
became aware again. It was Sgt.
Thompson, Urbanek! Urbanek! Urbanek!
Write on paper you are fine and
sign it. I answered, "I am not fine".
I didn't sign.

Miss Jody Ann Urbanek.

Attachment 6

VII. Exhaustion of Administrative Remedies
    Administrative Procedures.
E. If you did file a grievance:
3. What was the result, if any?
            Page 7 of 11

The results are the FWRC Warden Southerland
referred my Formal Grievance 1701-368-056
(Exhibit A) to FWRC Colonel Pabis who
referred it "to the investigative section of
The Office of the Inspector General for
appropriate action". Neither I nor my two
eye witnesses were interviewed. Colonel Pabis
wrote, "As action has been initiated you may
consider your appeal approved from that
standpoint. This does not constitute
substantiation of your allegations". I
was assured my appeal was approved
but I wanted acknowledgement my facts
reported were the truth. Then I understood
that will happen when the investigation
is completed. I thought interviews of
CO Coleman, Sgt. Thompson, Witness Rachel
Gonzalez and Eyewitness Kristin Reinwalt,
myself included. No interviews were done of
my eyewitnesses and I. The actual results
were both CO Coleman and Sargent Thompson
were permanently removed and relieved of
duty from all Outside Medical Transports
permanently. CO Coleman was assigned to
work in a dormitory for 2 weeks then she
disappeared altogether. Sgt. Thompson was
assigned to the Chow Hall.

## PART B - RESPONSE

| URBANEK, JODY | V27586 | 1701-368-056 | FL.WOMENS RECPN.CTR | B4113L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy or appeal has been received and reviewed. The issue of your complaint has been referred to the investigative section of the Office of the Inspector General for appropriate action.

Upon completion of necessary action, information will be provided to appropriate administrators for final determination and handling. This may or may not result in a personal interview with you.

As action has been initiated, you may consider your appeal approved from that standpoint. This does not constitute substantiation of your allegations.

M. Pabis, Colonel

FEB 03 2017

SIGNATURE AND TYPED OR PRINTED NAME OF
EMPLOYEE RESPONDING

SIGNATURE OF WARDEN, ASST.
WARDEN, OR SECRETARY'S
REPRESENTATIVE

*Exhibit A*

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

A Med

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☑ Warden    ☐ Assistant Warden    ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

| Urbanek                    Jody          A. | 0-V27586 | Lowell C.I. Annex |
|---|---|---|
| Last        First        Middle Initial | DC Number | Institution |

1701 - 368 - 056

| Part A – Inmate Grievance |
|---|

Medical Grievance.

Please refer to 3-paged typed attachment of the true facts of a criminal incident/conduct of CO Coleman and Sargent Thompson comitting Aggravated Battery on Elderly and perhaps more so Attempted Murder Due to their action's I could have died. The incident occurred at approximately 6 A.M. on the October 12, 2016 Outside Medical Transport and occurring at FWRC Florida Womens Reception Center Back Support Bldg. on the prison compound.

| 1-20-2017 | Jody Ann Urbanek |
|---|---|
| DATE | SIGNATURE OF GRIEVANT AND D.C. # |
|  | 0-V27586 |

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**   0   J. Urbanek

_____   _____
#        Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on: _____    Institutional Mailing Log #:_____    _____
                              (Date)                                                                    (Received By)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---|---|---|
|  | INMATE (2 Copies) | INMATE'S FILE - INSTITUTION/FACILITY |
|  | INMATE'S FILE | CENTRAL OFFICE INMATE FILE |
|  | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE GRIEVANCE FILE |

DC1-303 (Effective 11/13)              Incorporated by Reference in Rule 33-103.006, F.A.C.

Thank you for working towards truth and justice in the civil rights system. I'm elderly 65 years old, and I'm writing to you about the brutality of a prison guard who was working Outside Medical Transport. This prison guard chained me: hand-cuffed me and black-boxed me, funneling a long dog-chain through the black-box that pulled my hands to my waist while wrapping the dog-collar clasp to a chain-link and shackled my ankles. From behind me, this prison guard began pushing and shoving me seven times hitting the front of my body against the side of a seat until my body lost balance. I felt my head go back, I screamed, and my head went all the way back into a head-first, backward dive 10 feet down striking the concrete. Out of my side-vision I could see the two prison guards one on each side of me close enough to brush past yet neither prison guard reached out to block my fall. When I hit the concrete, I blacked out.  Both eyewitnesses stated they heard my head hit the concrete and watched both prison guards immediately pick up my body, then place my body back inside the van, then take off for Orlando. A wanton act of complete disregard for my life potentially causing my death or quadriplegia from Head/Brain Trauma, cervical vertebral fractures and other spinal fractures that cease breathing and render paralysis. By the grace of God, I could still breath and didn't suffer paralysis. Yet, I did suffer Head Trauma/Brain Damage so that I could not keep my balance to walk. The CHO (Chief Health Officer) Dr. Rodriguez, M.D. Assigned me to ADA (American Disability Act) status then to a handicap cell for one – solid year and the use of a walker for two full years.  Four doctors stated, "It could have been fatal! You could have had a stroke!" The two eyewitnesses saw the entire terror of wanton acts.  These two prison guards began to cover up right away by moving my body right away and not calling Emergency Medical on the prison compound.

2

Could you please arrange a civil rights case in personal injury and personal rights injuries violations? I do have Xerox copies of my Medical Record. These are Civil Rights Violations and deprivation of rights secured by the U.S. Constitution and Federal law and injuries to personal rights under color of State law to which I am entitled by reason of being a person in the eyes of the law. I found Case Law addressing Federal Precedence in Florida. 42 USCS §1983 personal injury actions in Florida governed by §95.11(3)(0) assault, battery, malicious interference or any other intentional tort. Fours years as the Period of Limitations. Also (3)(f) an action founded on a Statutory Liability. (3)(j) a legal or equitable action founded on fraud. Both four years. This incident occurred on October 12, 2016 and the period of limitations ends October 12, 2020.

471 U.S. 261 Wilson v. Garcia, 1985. Found §1983 personal injury actions in Florida governed by §95.11, Florida Statute and found in State Statutes concerning injuries to personal rights.

All of this has been recognized as the valid truth by the FWRC Medical Dept., who referred this incident to the Office of the Inspector General Investigative Section. Both prison guards were removed from Outside Medical Transports. Also, CO Coleman disappeared 2 weeks after the incident and has no longer worked at any of Lowell's four compounds of female institutions. She had intent proved by her many choices and decisions she made. Next to me, as the fall began Sgt. Thompson, a big strong man, could have stopped my fall. He out-ranked CO Coleman and was trained to stop her at the onset. Instead he chose and decided to cover it up including trying to coerce me into signing a document that I

3

was alright. I kept hearing my last name being called over and over again. I became aware again. Sgt. Thompson told me, "Sign your name on this paper that you are alright." I answered "I am not alright". I didn't sign anything.

Even after three (3) years, I continue to have episodes of permanent brain damage with a constellation of symptoms affecting ocular/vision, hearing, a loss of equilibrium, and body systems that the brain regulates: increases in body temperature, heart rate, respiration rate and brain pressure, also, gastro-intestinal and neuro-muscular changes; episodes lasting 20-30-minutes.

Respectfully Submitted,

1-20-2011

Jody A. Urbanek, DC #V27586
Lowell Correctional Institute-Annex
11120 N.W. Gainesville Road
Ocala, Florida 34482

4

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden    ☐ Assistant Warden    ☑ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse,** on the behalf of:

_Urbanek  Jody  A._       _O-V27586    Lowell C.I. Annex_
Last    First    Middle Initial       DC Number       Institution

---

### Part A – Inmate Grievance

Please refer to Attachment to institutional
level formal grievance. 1701-368-056 a
3-paged typed statement of the true true
facts of a criminal incident/conduct. I
realize my formal grievance at the institutional
level was approved; I further appeal the part
"allegations". I'm asking for your acknowledge-
ment that I was reporting the truth and
not merely allegations. Please pursue
criminal charges of Aggravated Battery on
Elderly and perhaps even Attempted Murder.
Let a jury decide. I'm 62 years old.

---

_February 12, 2017_                    _Jody Ann Urbanek_
DATE                              SIGNATURE OF GRIEVANT AND D.C. #

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**    _0_  _D. Urbanek_
                                    #       Signature

---

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on: _____    Institutional Mailing Log #: _____    _____
                (Date)                                          (Received By)

DISTRIBUTION:    INSTITUTION/FACILITY         CENTRAL OFFICE
                INMATE (2 Copies)            INMATE
                INMATE'S FILE               INMATE'S FILE - INSTITUTION/FACILITY
                INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                            CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 11/13)            Incorporated by Reference in Rule 33-103.006, F.A.C.

_Ex. B_

Attachment 9

VII. Exhaustion of Administrative Remedies.
   Administrative Procedures.
   E. If you did file a grievance:
   4. What steps, if any, did you take to
      appeal that decision?
         Page 7 of 11

Even though my appeal was approved already
at the institutional level, I further
appealed to Tallahassee (Exhibit B) request-
ing their acknowledgement that the facts
of the criminal incident that I gave
Warden Southerland was recognized and
validated as the truth and no longer
merely alledged allegations and to take
further action to persue criminal charges
against CO Coleman and Sargent Thompson.
I wrote to Tallahassee Secretary three
times and realized either Tallahassee
designated representative to answer appeals
or the institutional level FWRC grievance
ofc. was denying my appeal by not processing
it; I believe because of their Liability
for what was done to me by their two
prison guards. I was 62 years old then.

Attachment 8

~~XII.~~ Exhaustion of Administrative Remedies
 Administrative Procedures.
 C.    additional information.
 Page 8 of 11

When Plaintiff could not get satisfaction
from three appeals to Tallahassee she
reached out to the OIG Office of the
Inspector General, investigative section
(Exhibit A). The OIG never interviewed
Plaintiff and never interviewed the
two eyewitnesses: Ms. Kristina Reinwalt
and Ms. Rachel Gonzalez. Plaintiff
requested a copy of OIG's official
investigative reports and the knowledge as
to whether CO Coleman had been arrested.
All Plaintiff knew was Coleman had been
removed from all Outside Medical Transports,
spent two weeks assigned to a FWRC dorm,
then disappeared. OIG never responded.
        (Exhibit B) is a two letters both
dated Sept. 6, 2018 addressed to Office of the
Inspector General, 500 S. Duval St, Tallahassee,
FL 32399. Plaintiff gave details of the
10-12-16 criminal incident and touched on
medical. OIG has never responded.
        (Exhibit C) is a two-paged letter
to OIG Chief Inspector Kern reporting the
10-12-16 criminal incident including details
of medical injuries. Chief Kern was here
in-person at the Lowell C.I. Annex doing
a walk-about during yard-out on Oct. 17, 2019.

continued    Attachment 8

Chief Inspector Kern told Plaintiff in-person how to go about writing out to him. Kern explained to put a letter into a sealed envelope with his title and name on it. Plaintiff did so and waited. Finally, seeing Kern Plaintiff asked whether he received it. Kern stated, "Yes". He never interviewed me. To this day, never a response.

Shortly thereafter, OIC Inspector Michael Green called Plaintiff to Front Support Administration and interviewed her as a witness to her cell-mate's PREA allegations against prison guard Eli. Plaintiff declined, however, took advantage of Green being there. Plaintiff relayed the 10-½-16 criminal incident and brought Green up-to-date concerning OIC Chief Inspector Kern's not responding. Green promised and gave his word he would relay our meeting to Chief Kern. Never a response.

Around Sept./Oct. one year later Kern appeared at the Medical Building and his stance was shrinking back from any familiarity with Plaintiff.

Plaintiff contacted the OIC five times in varm Varying ways. Never a response.
10/6/20                                    Jody Ann Hrbanek

**PART B - RESPONSE**

| URBANEK, JODY | V27586 | 1701-368-056 | FL.WOMENS RECPN.CTR | B4113L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy or appeal has been received and reviewed. The issue of your complaint has been referred to the investigative section of the Office of the Inspector General for appropriate action.

Upon completion of necessary action, information will be provided to appropriate administrators for final determination and handling. This may or may not result in a personal interview with you.

As action has been initiated, you may consider your appeal approved from that standpoint. This does not constitute substantiation of your allegations.

M. Pabis, Colonel

SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING

SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE

FEB 03 2017

*Exhibit A*

To: Office of the Inspector General
    500 South Duval Street
    Tallahassee, Florida   32399

Title 11 Dept. of Law Enforcement (FDLE).
Div. 11N  Office of Inspector General
Ch.  11N  Violent Crime Investigative

I'm the victim of a violent crime whereas
the investigation and legal action meets
the general obligations to the criminal
justice system.

What are the results of the violent crime
investigation involving FL D.O.C. employee
CO Coleman's Aggravated Battery of me
while I was hand-cuffed, black-boxed,
leg-chained and shackled. The Date of
Incident is October 12, 2016. I have
since had Brain Damage and ambulated
with a walker. CO Coleman's Aggravated
Battery culminated to a 10 foot backward-
dive to concrete.

The OIG federal officials are charged with
supervising the Florida Dept. of Corrections
investigations.

                    Exhibit B                              1

To: Office of the Inspector General.
page 2.

None of my eyewitnesses: Kristina Reinwalt, Rachel Gonzalez, were investigated and I was not personally interviewed. An incomplete investigation cannot be relied upon to sustain any conclusions. I want a copy of your final reports.

In the Florida Advance Legislative Service, FL 119th Regular Session, Chapter 2017-31, Committe Substitute For House Bill 1201 and Florida Statute 944.151, it is the intent of the Legislature that the F.L.D.O.C. shall be responsible for the (safe operation and) security. This is not a case of security deficiencies but of security gross abuse. I was the victim of an inappropriate incident of use of force amounting to Elderly Aggravated Battery, a felony.

The Florida Statutes pertaining to and pursuant of this incident are: 943.04, 944.151, 944.31, 944.33, 944.331, 944.35, Query 944.31 (1)(6); (3)(a)(c); (4)(a)(b)(c)(e).

Exhibit B                                    2

To: Office of the Inspector General
page 3.

944.331 Inmate grievance procedures
as promulgated by the U.S. Dept. of Justice
pursuant to 42 U.S.C. s. 1997e. The
FL D.O.C. office of general counsel shall
oversee the grievance. [My Formal Grievance
Log Number is 1701-368-056 and my
Current Inmate Location at the time was
the FL Womens Reception Center].

944.31(2), F.S.: Each employee of FL D.O.C.
who either applies physical force [CO Coleman]
or was responsible for making the decision
to apply physical force (Sargeant T. Thompson)
pursuant to this subsection shall prepare,
date and sign an independent report within
1 working day of the incident. Please send
me a copy of both independent reports with
all appropriate documentation sent by Warden
Sutherland or circuit administrator to your
office? Did your office file a formal complaint
against CO Coleman in accordance with the law?
Was Coleman arrested?

September 6, 2018    Jody Ann Akbanek              3

Exhibit B

To: The Office of the Inspector General
    Tallahassee, Florida. 32399

From: Miss Jody Ann Lichonek
    Florida Womens Reception Ctr.
    Florida D.O.C. # 0-V27586
    SSN 177464774; D.O.B. 6/17/1954

A brief synopsis: This request is Time
Sensitive, in that, to timely file in the
U.S. District Courthouse for the Middle
District of Florida in Ocala, I need the
information requested in the following pages
within the week. Does your office have
federal attorneys available to timely file
a federal civil suit for me by October 12, 2018?
If not, how do I go about locating a federal
attorney? What is the statute of limita-
tions on this? Two years from the Date of
Incident? I was 62 years old at the
time of the Aggravated Battery on Elderly
by a prison guard CO Coleman. This was
a wanton, malicious, illegal act and a
complete disregard for my life that was
substantially certain to cause injury,
without just cause or excuse and
without legal justification, in that,
it was unprovoked I was absolutely
not acting as a disciplinary problem. 4

Exhibit B

To: The Office of the Inspector General
page 2

Culminating during the battery, my body
did a 18 feet backwards-dive then
landed striking concrete with the back
of my head, brainstem, cervical vertebra
and spinal cord. I was unconscious
and the two eyewitnesses stated
CO Coleman and Sargent J. Thompson
immediately and quickly moved me back
into the van, shut and locked the door
and took off for Orlando a 3-hour trip
away leaving the F.D.O.C. FWRC
(Florida Women's Reception Ctr.) prison
and all medical help behind covering-up
what they had just done to me thereby
breaking/violating Florida Laws.

September 6, 2018    Jody Ann Urbanek
                    Exhibit B

Exhibit B.                              5

OIG on-site Lowell C.I. Annex.

To: Chief Kern, initially-medically there was a cover-up that the prison guard CoColeman made to persuade a Nurse DeLeon at the FWRC ER 7-8 hours afterwards. Nurse DeLeon no longer works at FWRC. Also, at the scene of the crime both CoColeman and Sgt. Thompson covered it up by moving my body immediately, quickly from off the concrete pavement and placing my body back inside the van and taking off for Orlando never notifying FWRC Medical nor following Protocal for Head Brain Trauma which calls for being careful of my head, brainstem, cervical vertebra and spinal cord. There was no regard by either of them for my life; I could have stopped breathing, had a stroke 4 doctors stated or become paralyzed. The two eyewitnesses reiterated this to me later, along with stating they heard my skull hit the concrete hard. I blacked out. Another day, I was given a walker by a different ER Nurse which I used for two years. I was classified ADA. I still have residual brain trauma. I will have to live with the damage from the brain trauma for the rest of my life; episodes of extreme pain, feeling I will pass-out from a weakness coming over me that I must lay down or fall down, vision blurs and seeing shimmering, wavy lights in rectangles, black holes with waves around, orbs of light, pressure in my brain increases, a

Exhibit C

Continued OIG on-site pages to Chief Kern. high-pitch noise in my ears, hyperventilating, pre-seizure, pre-stroke like symptoms, that last 20 minutes. Apart from episodes daily there's constant pressure and pain present with shooting pain at various places.

SIR, I wish to file criminal charges on CO Coleman for the felony-battery she commited on me because medically I could not hoist myself up into a van and she refused just didn't want bothered going into Back Support to retrieve the First Step. Instead, she threatened me with lock for a very long time and began shoving me many times while I was all chained-up until I was standing on the van floor then continued shoving me into the side of the seat. I was not in the aisle so Coleman just kept hitting me against the side of the seat until Coleman let go & watched gravity take over to send my body into a 10-feet backwards-dive, head-first to concrete.

Concluding, I can only surmise it was Sgt. Thompson who told Colonel Pabis the truth. As the Sgt. he could have made the decision to stop Coleman. He never did. Both Coleman and Thompson were perman-ently removed from all Outside Medical Trans-ports. Coleman was assigned to FWRC-H Dorm for a week or so then disappeared altogether. Sgt. Thompson was assigned to the FWRC Chow Hall.

10/17/18        Exhibit C        Jody Ann Urbanek

U.S. POSTAGE ≫ PITNEY BOWES

ZIP 34482 $ 002.80⁰
02 4W
0000360144 OCT 08 2020

Miss Jody Ann Urbicek
Fl. D.o.C. 0-V27586
Lowell Correctional Institution Annex
11120 N.W. Gainesville Road)
Ocala, Florida  34482

Legal ID
10/4/2020

Mail originated at
Florida Correctional
Institution

Clerk of Court's Office
United States District Court
Golden-Collum Memorial Federal Bldg.
and U.S. Courthouse
207 N.W. Second Street
Room 337
Ocala, Florida  34475

SCREENED
BY USMS

34475